

# IN THE
# Court of Appeals of Indiana

Brian G. Vamos,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Jul 22 2026, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 22, 2026

Court of Appeals Case No.
26A-CR-573

Appeal from the Washington Superior Court

The Honorable Dustin Houchin, Judge

Trial Court Cause No.
88D01-2505-F6-296

**Memorandum Decision by Judge May**
Judges Pyle and Scheele concur.

**May, Judge.**

[1] Brian G. Vamos was approximately ten weeks into his probation, after pleading guilty to Level 6 felony operating a vehicle with an alcohol concentration equivalent of .15 or more with a prior conviction,[1] when he was stopped for the same offense and threatened the trooper who arrested him. The State petitioned for revocation of his entire suspended sentence, and after hearing evidence, the trial court revoked Vamos's entire suspended sentence.

[2] On appeal, Vamos argues the court abused its discretion when deciding his sanction by considering Vamos's third arrest for driving while intoxicated – which occurred just days before the revocation hearing and had not been mentioned in the State's petition to revoke. Vamos argues the trial court's reliance on that arrest violated his right to due process as explained in *Ewing v. State*, 273 N.E.3d 1107 (Ind. 2026), and *Puckett v. State*, 956 N.E.2d 1182 (Ind. Ct. App. 2011). We disagree and affirm his sanction.

## Facts and Procedural History

[3] On October 8, 2025, under Cause Number 88D01-2505-F6-296, Vamos pled guilty to Level 6 felony operating a vehicle with an alcohol concentration equivalent of .15 or more with a prior conviction. The trial court sentenced him to 545 days in the Indiana Department of Correction with 535 days suspended to supervised probation. As conditions of his probation, Vamos was required to commit no new offenses, complete an Alcohol and Drug Use Program

---

[1] Ind. Code §§ 9-30-5-1(b) & 9-30-5-3(a)(1).

("ADUP"), pay fines and fees on a monthly schedule, and – because his license had been suspended as part of his sentence – operate a vehicle only under specialized driving privileges with an ignition interlock device installed.

[4] Vamos reported to the Washington County Probation Department on November 4 and December 4, 2025. On December 19, 2025, Indiana State Police Trooper Abigail Powers stopped Vamos for traveling 70 miles-per-hour in a 55-mile-per-hour zone. When she approached Vamos's vehicle, Vamos opened the door, stuck his hands out, and yelled "don't shoot." (Tr. Vol. 2 at 12.) Trooper Powers observed multiple signs of intoxication – an odor of alcohol, bloodshot eyes, slurred speech, poor dexterity, and unsteady walking – and Vamos admitted he had been drinking. Vamos refused to complete the field sobriety tests, refused the portable breath test, and refused the certified chemical breath test. During transport, he made threatening statements to Trooper Powers, including "I'll see [you] in three (3) days[.]" (*Id.* at 15.) Trooper Powers obtained a search warrant, and a hospital nurse drew Vamos's blood.

[5] On January 2, 2026, the State filed a Petition for Revocation of Suspended Sentence. The Petition alleged three grounds for revocation: (a) commission of new criminal offenses on December 19, 2025, as charged in Cause Number 88D01-2512-F6-000774 and including Level 6 felony operating while

intoxicated with a prior conviction[2] and Level 6 felony intimidation[3]; (b) an unpaid balance of fines and fees; and (c) failure to attend or complete ADUP. The Petition asked the court to "enter a revocation of said suspended sentence." (Appellant's App. Vol. 2 at 62.)

[6] On February 3, 2026, three days before the revocation hearing, Vamos arrived at the Washington County Sheriff's Department to comply with an order to surrender. A jail officer reported that Vamos smelled of alcohol, and Vamos admitted to Deputy Ryan Ater that he had driven himself there. Vamos registered .126 on a portable breath test, and a blood draw revealed his blood alcohol content was .155 and his blood also contained benzodiazepines. Police arrested Vamos for Level 6 felony operating a vehicle while intoxicated with a prior conviction.

[7] The trial court held the revocation hearing on February 6, 2026. The State called Trooper Powers to describe the December 19th traffic stop, and the trial court also reviewed the probable cause affidavit and docket for the new charges based on that arrest. Then, as the State prepared to call Deputy Ater to testify about the arrest on February 3rd, the prosecutor told the court: "[W]e did not allege this arrest from a few days ago, and [sic] as a new petition, or as a new element for the petition to revoke, um, I think it would be more information for

---

[2] Ind. Code §§ 9-30-5-2(a) & 9-30-5-3(a)(1).

[3] Ind. Code § 35-45-2-1.

the Court regarding the sentencing today." (Tr. Vol. 2 at 25.) The court asked if defense counsel had any objection to the State calling the witness, and defense counsel stated, "No, no objection." (*Id*.) Deputy Ater then described the incident on February 3, 2026, at the Washington County Sheriff's Department.

[8] At the close of evidence, the trial court issued its ruling in two parts. Regarding whether Vamos violated probation, the court stated:

> I'm going to find that he violated the terms and conditions of his probation by committing the new offenses listed in the petition itself, I'm not considering the second, the one from February 3rd as a basis for revocation. I agree that that's not part of the petition.

(*Id*. at 42.) The court found by a preponderance of evidence that Vamos had committed operating a vehicle while intoxicated, intimidation, and operating a vehicle while on specialized driving privileges on December 19, 2025. The court made no finding of violation on the allegations of unpaid fines and fees or the failure to attend ADUP.

[9] Immediately thereafter, the court announced the sanction:

> I also find that he's an extreme, that he's a grave danger to this community and every day that he's in jail is a day that somebody doesn't get hit and killed out here on one of our roads by his irresponsible behavior. So, I'm revoking the entirety of the suspended sentence, I would put him in the[re] longer if I had longer to give, but five hundred and thirty-five (535) days is all that was suspended, so that's what you're getting. . . . So, this is

not even a close call. Clearly you violated, clearly, you're going to be revoked for the amount of time that I can do it. Based on your behavior while on probation, your behavior that I've observed, uh, throughout these cases, including today, from the Bench.

(*Id*. at 43.) The court entered a written Order on Hearing to Revoke Suspended Sentence the same day. Among its findings, the court noted that Vamos "has been arrested for felony operating a vehicle while intoxicated three times in the past six months" and listed that finding as one of four reasons for imposing the maximum sanction. (Appellant's App. Vol. 2 at 75.)

## Discussion and Decision

[10] When the State files a petition to revoke probation, the trial court must undertake a two-step process: determining first whether the probationer violated a condition or conditions of probation and second what sanction to impose for the violation. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). A probation revocation determination, including the sanction imposed, is reviewed for abuse of discretion. *Id.* An abuse of discretion occurs when the trial court's "decision is clearly against the logic and effect of the facts and circumstances, or when the trial court misinterprets the law[.]" *Id.* (internal citation omitted).

Vamos contends the trial court abused its discretion by relying on the February 3rd arrest at the sanction stage,[4] which Vamos asserts violated his right to due process because the petition to revoke his probation did not give him notice that the State would rely on that incident to support his sanction. When the State files a petition to revoke probation, the probationer is entitled to the following due process rights:

> (a) written notice of the claimed violations of probation; (b) disclosure to the probationer of the evidence against him or her; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body; and (f) a written statement by the factfinder as to the evidence relied on and reasons for revoking probation.

*Puckett*, 956 N.E.2d at 1186. Indiana "codified the[se] due process requirements . . . in Indiana Code section 35-38-2-3." *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). However, if "a probationer admits to the violations, the procedural safeguards [in that statute] and the evidentiary hearing are unnecessary. Instead, the court can proceed to the second step of the inquiry and determine whether the violation warrants revocation." *Id*.

---

[4] The State argues "there is no clear indication that the trial court relied on the February 3 evidence in its sanction." (Br. of Appellee at 12.) However, as Vamos notes, the trial court's written order found Vamos had been "arrested for felony operating a vehicle while intoxicated three times in the past six months." (Appellant's App. Vol. 2 at 75.) Arriving at a total of three arrests in the six months prior to the probation revocation required the trial court to rely on the February 3rd arrest, and we thus reject the State's argument.

[12] Vamos notes that, in accordance with that law, "Indiana courts have enforced that notice requirement vigorously *at the violation stage*." (Br. of Appellant at 12) (emphasis added). He then asserts "the Indiana Supreme Court extended that notice principle from step one to step two of the probation revocation process" in *Ewing v. State*, 273 N.E.3d 1107 (Ind. 2026). (*Id.*) We disagree with Vamos's reading of *Ewing* as it relates to his case.

[13] Lamenski Ewing received a five-year sentence, which was to be served as two years on work release and three years on probation. *Id.* at 1109. Ewing thereafter failed to return to the work release facility, and the community corrections case manager filed a petition to revoke Ewing's placement in community corrections. *Id.* Several months later, police arrested Ewing and charged him with Level 6 felony failure to return to lawful detention. *Id.* At a hearing on the petition to revoke work release, the State asked the trial court to revoke both Ewing's work release and the probation that he was to serve thereafter. The trial court granted the State's request and ordered Ewing to serve the rest of his five-year sentence in the Department of Correction. *Id.* at 1110. Ewing appealed, and our Indiana Supreme Court held "the State cannot seek sanctions beyond those identified in a revocation petition unless the defendant has actual notice that the State is seeking those sanctions." *Id.* at 1114.

[14] Unlike in *Ewing*, the petition filed against Vamos requested "REVOCATION OF SUSPENDED SENTENCE[.]" (Appellant's App. Vol. 2 at 61)

(capitalization in original). Thus, Vamos was given notice that the State wished to revoke all of his suspended sentence. *Ewing* did not require more than that.

[15] Nor does *Puckett*, 956 N.E.2d 1182, compel the reversal that Vamos seeks. Puckett had been charged with two counts of Class B felony child molesting based on allegations that he had sexual intercourse with a twelve-year-old when he was eighteen years old and one count of Class C felony child molesting based on an allegation that he fondled a twelve-year-old when he was eighteen years old. *Id*. at 1183. Puckett agreed to plead guilty to the Class C felony in exchange for the dismissal of the Class B felonies, and he received a four-year suspended sentence. *Id*. at 1184.

[16] Two years later, the State filed a petition indicating Puckett "violated his probation by failing to notify the probation department of an intimate relationship, having contact with a person under the age of eighteen, and using a computer with internet access." *Id*. One month later, the State amended the petition to add "that Puckett had been charged . . . with Class D felony failure to register as a sex offender." *Id*. Six months later, the State filed a second amendment to allege "Puckett had used alcohol, slept in a place other than his residence without prior approval, and had been present at a park or school." *Id*. Later that same month, the State filed an amendment "alleging that Puckett had traveled alone after 10:00 p.m. without prior approval, had been present at a park or school, and had been charged in Huntington County with Class A misdemeanor check deception for writing a bad check for $25.60." *Id*.

[17] Two and a half years later, when the trial court finally held a hearing on the petition to revoke Puckett's probation, Puckett agreed to admit he violated "probation by committing the crime of Class D felony failure to register as a sex offender and the State agreed to dismiss, and not present evidence on, any of the other probation violation allegations." *Id.* Nevertheless, when determining Puckett's sanction, the trial court explicitly relied on the probation violation allegations that had been dismissed by the State. We held: "It was erroneous for the trial court to rely upon dismissed probation violation allegations when deciding what sentence to impose for Puckett's admitted probation violation, especially given that Puckett was afforded no due process opportunity to present any evidence to contradict such allegations." *Id.* at 1188.

[18] Unlike in Puckett's hearing, at Vamos's revocation hearing the State presented evidence of the events of February 3, 2026, and Vamos did have an opportunity to challenge or contradict that evidence. Moreover, when the prosecutor advised the trial court that she wished to call Deputy Ater to present evidence relevant to the sanction, but not the violation, defense counsel stated, "No, no objection." (Tr. Vol. 2 at 25.) *Puckett* does not support Vamos's request for reversal.

[19] Finally, even if the trial court's consideration of the February 3rd arrest at the sanction stage was error, any error was harmless. We will affirm where the record gives us confidence the trial court would have reached the same result on the properly found conduct alone. *See Figures v. State*, 920 N.E.2d 267, 273

(Ind. Ct. App. 2010) (affirming revocation of probation as harmless error when one of three alleged violations was not proven by evidence presented by State).

[20] Vamos's behavior on December 19, 2025, provided more than adequate grounds for full revocation of his probation. Vamos began probation on October 8, 2025, after he pled guilty to Level 6 felony operating a vehicle with an alcohol concentration equivalent of .15 or more with a prior conviction. Then on December 19, 2025, Trooper Powers stopped him for speeding 70 miles-per-hour in a 55-miles-per-hour zone and found him exhibiting multiple signs of intoxication. Vamos admitted to drinking, refused every field sobriety test and both breath tests, and made repeated threatening statements to Trooper Powers during transport. A blood draw confirmed his blood alcohol content was above the legal limit. He committed this offense while operating a vehicle on specialized driving privileges that required an ignition interlock device – a condition directly tied to the very conviction for which he was on probation. Vamos committed these new felony offenses - the same type of offense for which he was on probation – within two months of sentencing – while already on specialized driving privileges.

[21] The commission of new criminal offenses while on probation provides strong support for imposing the maximum sanction, particularly where the new offense mirrors the underlying conviction. *See Sieg v. State*, 271 N.E.3d 620, 624 (Ind. Ct. App. 2025) (affirming full revocation where defendant committed same type of offense within two months). Because Vamos's crimes on December 19, 2025, justify the full revocation of his suspended sentence, any

error in the trial court's consideration of his arrest on February 3rd when determining that sanction was harmless. *See id*. (holding any error in trial court's consideration of unproven violations was harmless).

## Conclusion

[22] We affirm the trial court's Order on Hearing to Revoke Suspended Sentence.

[23] Affirmed.


Pyle, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANT

Ryan D. Bower
Washington County Public Defender's Office
Salem, Indiana


ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana


Daylon L. Welliver
Deputy Attorney General
Indianapolis, Indiana